John Chad **BOURQUE**

v.

**NAN YA PLASTICS CORPORATION, AMERICA, et al.**

No. 95–715–A.

United States District Court, M.D. Louisiana.

Nov. 28, 1995.

Craig Sterling Watson, Cave & McKay, Jack J. Whitehead, Jr., Baton Rouge, LA, for Plaintiff.

William H. Parker, III, Charles M. Kreamer, Allen & Gooch, Lafayette, LA, for Defendants.

## RULING ON MOTION FOR REMAND

JOHN V. PARKER, Chief Judge.

This matter is before the court on plaintiff's motion to remand to state court. Oral argument is not necessary. Removal jurisdiction is allegedly based on 28 U.S.C. § 1332.

## BACKGROUND

This action was originally filed in the Eighteenth Judicial District Court for the Parish of Pointe Coupee. Plaintiff is a citizen of Louisiana. Defendants Nan Ya Plastics Corporation, America and Formosa Plastics Corporation, Louisiana are corporations incorporated in the state of Delaware with their principal place of business in Livingston, New Jersey. Defendant Zurich–American Insurance Company is an insurance company domiciled in the state of Illinois with its principal place of business in Schaumberg, Illinois. Bobby Higginbotham and Robert Austin who are named as defendants in the state court petition are Louisiana citizens, as is plaintiff. If Higginbotham and Austin are properly joined as defendants, then there is no federal subject matter jurisdiction because the plaintiff and all defendants are not diverse in citizenship.

Plaintiff is employed by Nan Ya Plastics Corporation, America as a machine operator, and was injured when his hand was caught in a plastic press and burned by molten poly vinyl chloride (PVC). Plaintiff claims that defendants, Austin and Higginbotham, his foreman and supervisor respectively, taught him to clean excess PVC plastic from the machine by scraping it with a knife, without turning the machine off, and that as a result of following this practice, his hand was caught in the calendar rollers on the press, and burned by the PVC.

Defendants Nan Ya Plastics Corporation, America, Formosa Plastics Corporation, Louisiana, and Zurich–American Insurance Company removed the case to this court. They claim that the nondiverse defendants, Higginbotham and Austin, were fraudulently joined, and that the plaintiff has no intention of seeking judgment against them.

Plaintiff moves to remand the case to state court. Although plaintiff had not served defendants Higginbotham and Austin when the case was removed, he has served them now, after removal, and argues that they were not fraudulently joined. Under the Louisiana Workers' Compensation Act, employers and fellow workers are exempt from tort claims by employees. Plaintiff argues that Higginbotham and Austin are not shielded by the exclusivity provisions of the workers' compensation statute, La.R.S. 23:1032, because they are individually liable to him for exemplary damages under La.Civil Code art. 2315.3 [1] as construed by the Supreme Court of Louisiana in *Billiot v. B.P. Oil Co.*, 645 So.2d 604, 606 (La.1994). Plaintiff also alleges that Higginbotham and Austin are not shielded by the exclusivity provisions of La.R.S. 23:1032 because his injury resulted from their intentional acts.

The jurisdictional amount is not in dispute. The only issues before this court are whether the plaintiff fraudulently joined Higginbotham and Austin, and whether he has voluntarily abandoned his claims against them.

---

1. The court notes that plaintiff alleges in paragraph 18 of his petition that "the defendants were engaged in the storage, handling, or transportation of hazardous or toxic materials as contemplated by Article 2315.3 ..." and that the plaintiff "was injured due to the wanton and reckless disregard of the public safety by the defendants...." Plaintiff does not allege what the hazardous or toxic substance is that he is referring to, how any of the defendants acted in a wanton or reckless fashion, or how their conduct is connected to his injuries. Looking at plaintiff's memorandum and pleadings as a whole, it appears that plaintiff intends to allege that PVC is a hazardous or toxic substance, and that the wanton or reckless conduct of the defendants which caused his injury is all of the allegedly tortious conduct upon which plaintiff bases this action.

## DISCUSSION

The burden of establishing federal jurisdiction is on the party seeking removal. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Because removal raises serious concerns with regard to concepts of federalism and comity, removal jurisdiction is strictly construed. *Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir.1988). The right to remove a case to federal court is derived from Article III, Section 2 of the Constitution ("The Judicial Power shall extend to all ... controversies ... between citizens of different States ...") and vested in district courts by 28 U.S.C. § 1441; removal in this case is allegedly based on diversity of citizenship.

## VOLUNTARY DISMISSAL

Defendants assert that plaintiff does not intend to pursue his claims against Higginbotham or Austin and has thus "abandoned" his claims against those defendants. The defendants can avoid remand of the case if they can show that plaintiff has voluntarily abandoned his claims against the non diverse defendants by clear and unambiguous acts. *Erdey v. American Honda Co., Inc.*, 96 F.R.D. 593 (M.D.La., 1983). To establish this argument, the defendant must show that the plaintiff, by a voluntary act, has clearly and definitively demonstrated an intention to discontinue the action as to the non diverse defendants. The fact that a non diverse defendant has not been served, without more, does not entitle a diverse defendant to remove. *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939). In *Aydell v. Sterns*, 677 F.Supp. 877, 881 (M.D.La. 1988), this court found that a direction by the plaintiff to "withhold service" on the defendants was not, by itself, a sufficiently clear and definitive declaration by the plaintiff of an intention to abandon his claim against the non diverse defendant to constitute a voluntary dismissal.

The last page of the state court petition instructs that "all defendants be served in accordance with paragraph two of this petition." As to each of the nondiverse defendants, paragraph two provides "[named defendant] is an individual of the full age of majority who resides in ... Louisiana and may be served at: HOLD SERVICE."

Defendants argue that the instruction "HOLD SERVICE" is sufficient to demonstrate abandonment of the action against those two defendants.

The removing defendants have not offered any additional facts to support their claim that the plaintiff does not intend to pursue his claims against these defendants. Plaintiff has now served those defendants.

Because federal jurisdiction is determined at the time of removal, *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256 (5th Cir.1995), post removal service will not have any bearing on this issue, although it does indicate an intent to prosecute, not abandon, the claims against the nondiverse defendants. This court finds that the plaintiff's failure to serve the petition on Higginbotham and Austin does not amount to a clear and unambiguous act sufficient to constitute a voluntary dismissal or abandonment of his claims against these defendants.

## FRAUDULENT JOINDER

In order to establish that a non diverse defendant has been fraudulently joined, the moving party must show that there is no possibility that the plaintiff could establish a cause of action against the non diverse defendant in state court. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). A federal district court may employ a summary judgment type process in resolving removal questions in diversity cases. *Mitchell v. Exxon Corp.*, 860 F.Supp. 332 (M.D.La.1994). The court may consider the affidavits submitted in connection with the motion to remand, or with the defendants' opposition to the motion, but the court must evaluate all of the factual allegations in the light most favorable to plaintiff, and resolve all contested issues of substantive fact in favor of plaintiff. *B., Inc. v. Miller Brewing Co.*, 663 F.2d at 549; *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98 (5th Cir.), cert. den., 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). Since this is a diversity case, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny require

the court to look to the law of Louisiana to decide the substantive issues. *Mitchell,* 860 F.Supp. at 334.

## Workers' Compensation

■ The remedies provided to an injured employee by the Louisiana Workers' Compensation statute, La.R.S. 23:1032 displace all other rights and remedies against the injured employee's employer or co-employees. Section 1032 A.(1)(a) says:

The rights and remedies herein granted to an employee ... on account of injury ... for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee ... against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury ...

■ However, an employee's claim against his employer or co-workers is not barred by the Workers' Compensation statute if the claim is based on an intentional act. Section 1032 B. says:

Nothing in this chapter shall affect the liability of the employer ... or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

Article 2315.3 of the Louisiana Civil Code authorizes exemplary damages in addition to general and special damages where, "... plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."

■ In *Billiot v. B.P. Oil Co.,* 645 So.2d 604 (La.1994), the Supreme Court of Louisiana found that an employee's claims for exemplary damages against his employer under article 2315.3 fit within the limitation in sec. 1032 B of the exclusivity provisions of the Workers' compensation statute. Thus the plaintiff's claims for exemplary damage were not barred. Accordingly, the workers' compensation statute will preclude plaintiff's claims against the non diverse defendants, since they are co-employees, unless his claims are based on injuries resulting from

their intentional acts, or conduct for which exemplary damages may be awarded under La.Civil Code art. 2315.3.

We now turn to each of these issues in the determination of whether the non diverse defendants have been properly joined and ultimately whether this court has subject matter jurisdiction.

## Intentional Act

■ The workers' compensation statute does not define "intentional act," but Louisiana jurisprudence has set forth a definition of "intentional tort." A tort is intentional whenever the defendant consciously desires to bring about the physical results of his act or believes those results are substantially certain to follow from the conduct. *Bazley v. Tortorich,* 397 So.2d 475 (La., 1981); *King v. Schuylkill Metals Corp.,* 581 So.2d 300 (La.App. 1 Cir., 1991). An employer's mere knowledge or appreciation of a work place risk to an employee does not constitute "intent" under the intentional act exclusion. *Tapia v. Schwegmann Giant Supermarkets, Inc.,* 590 So.2d 806 (La.App. 4 Cir., 1991). An injury is not "substantially certain" to occur merely because a high probability of injury exists; injury is only intentionally caused where the injury is virtually sure to occur, or nearly inevitable. *Mahfouz v. J.A.C.E. Oilfield Sales and Service, Inc.,* 569 So.2d 1074 (La.App. 3 Cir., 1990). Negligence, or even gross negligence, is not enough to allow imputation of intent. *Gallant v. Transcontinental Drilling Co.,* 471 So.2d 858 (La.App. 2 Cir., 1985).

Plaintiff alleges in the petition and declares in his affidavit that based on his conversations with Higginbotham and Austin, he believes that they consciously desired and were substantially certain that an injury would result from the mandated procedure for cleaning the calendar press. If this were an exception of no cause of action in a Louisiana state court, the court might well be bound to look no further than the allegations on the face of the complaint, accept them as true and deny the exception. *Mayer v. Valentine Sugars, Inc.,* 444 So.2d 618 (La.1984). As this court pointed out in *Mitchell v. Exx-*

*on Corp.,* 860 F.Supp. 332, 334 (M.D.La. 1984):

> In subsequent [to Valentine Sugars] Louisiana cases, a procedure has evolved in "intentional tort" cases where the employer's (or co-worker's) exception of no cause of action is denied based on conclusory "well pleaded facts," followed by grant of the defendant's motion for summary judgment where plaintiff cannot produce a factual basis to support the generalized intent allegations of the petition. (citations omitted.)

■ Plaintiff's conclusory statements in his affidavit might be enough to survive an exception of no cause of action in a Louisiana state court. However, *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny do not require this court to apply Louisiana's procedural rules in this situation. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

The Louisiana peremptory exception of no cause of action has no precise equivalent in federal procedure and there is no motion to remand in Louisiana procedure. Federal district courts are not bound by conclusory allegations of "intentional tort" on federal motions to remand.

> A federal district court in resolving fraudulent joinder claims is not, ... handcuffed by the "well pleaded allegations" of the state court petition. On the contrary, a federal court may pierce the pleadings in resolution of such claims.... While district courts may not pre-try the merits in determining removal jurisdiction, it has long been settled that the district courts may employ a summary judgment type process for resolving fraudulent joinder issues.... Although this court is bound by Louisiana substantive law in resolving the question of possibility of recovery, we apply federal procedure. Under federal procedure, we may probe and pierce the allegations of the petition even though a Louisiana court might be bound by such pleadings. (citations omitted.) *Mitchell,* 860 F.Supp. at 335.

While this court accepts as true all of the specific factual allegations which the plaintiff makes in his affidavit, the court will not give deference to the plaintiff's factual or legal conclusions.

Defendants argue that Higginbotham and Austin can not be culpable for plaintiff's injury because they did not have any duty or authority to determine the safety of established procedures, or to modify established procedures because of safety reasons. In their affidavits, Higginbotham and Austin attest that their corporate employer had not delegated any responsibility to them for determining when normal operating procedures should be modified for safety reasons. They also attest that they had no authority to alter or modify the normal procedure for directing excess material generated during the manufacturing process, or to require that the calendar rolls be shut down during the directing of excess material. They further attest that their initial training included the company's normal operating procedure for directing excess PVC, and that this was the procedure they taught plaintiff. Plaintiff does not dispute this, other than by generally alleging that they, as his foreman and supervisor, were "charged with the duty to oversee, train, and instruct [him]." The court accepts the statements of Higginbotham and Austin as undisputed, since plaintiff has not alleged any specific facts to dispute them. The court further accepts as undisputed that Higginbotham and Austin trained plaintiff as they were trained and as they were instructed to do by their supervisors.

■ In order to state a claim against a fellow employee for liability of any kind, including intentional acts, one must establish breach of a duty owed to the plaintiff. For some time there was disagreement among the Louisiana courts as to the circumstances under which a corporate officer, agent, supervisor, or co-employee could be individually liable in tort for a breach of his or her employment duties to a third person. The Supreme Court of Louisiana, in *Canter v. Koehring Co.,* 283 So.2d 716, 723 (La., 1973), settled the dispute, and set out the circumstances in which an employee could be liable to a third person, including a co-employee, for injuries resulting from the breach of a

duty imposed by the employer.[2] *Ford v. Elsbury*, 32 F.3d 931 (5th Cir., 1994).

First, the employer must owe a duty of care to the plaintiff, and the plaintiff's claims for recovery must be based on a breach of this duty of care. *Canter* 283 So.2d at 721. Under La.R.S. 23:13, Nan Ya must provide a safe work place for plaintiff, and it is the failure to provide a safe work place upon which plaintiff bases his claims. Plaintiff is also a part of the general public whom the legislature intended to protect with article 2315.3.

Secondly, the duty of care, owed by the employer to the plaintiff, must have been delegated by the employer to the defendant who allegedly caused the injury. *Canter*, 283 So.2d at 721. Nan Ya's duty under the statute is to provide a safe work place for its employees. Plaintiff no longer has a cause of action based on La.R.S. 23:13, but the employer still has the duty to provide a safe work place. While Higginbotham and Austin were charged with the duty of overseeing, training and instructing plaintiff, their affidavits show that they did not owe a personal work place duty to him with regard to creating or modifying the procedure for cleaning excess plastic from the calendar press.

Third, the defendant must have breached his or her duty of care owed to this plaintiff through personal fault. *Canter*, 283 So.2d at 721. Plaintiff has not alleged that either of the non diverse defendants breached their personal duty of care to oversee, train, or instruct him. Plaintiff's claim is essentially that the procedure they taught him for cleaning the calendar rolls was dangerous, and that the procedure itself is what caused his injury. Plaintiff's claim is that what they taught him breached their duty of care to him, not how well they taught him. In fact, plaintiff essentially alleges that Higginbotham and Austin taught him the procedure well enough that he followed the

procedure, and was injured as a result. Plaintiff has not shown that either Higginbotham or Austin breached a duty of care owed to him, which had been delegated to them by their employer. Neither has plaintiff set forth any breach of an independent duty of care toward him by either fellow worker.

The fourth requirement, under *Canter*, is that the fault of a fellow employee cannot be based on a general administrative responsibility to supervise others. In view of the preceding comments, this factor need not be considered.

Plaintiff has not alleged any specific facts disputing the assertions of Higginbotham and Austin that they both lacked authority to modify the procedure, and thus any duty to ensure the safety of the procedure. The court finds that plaintiff has not shown that either Higginbotham or Austin breached a duty of care which they owed personally to the plaintiff. The undisputed facts demonstrate that plaintiff could not recover individually from his co-employees under Louisiana law.

### Exemplary Damages under Civil Code art. 2315.3

Louisiana Civil Code art. 2315.3 says:

In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.

 Exemplary damages are historically prohibited in Louisiana, and are available only where the legislature has affirmatively authorized them. Statutes authorizing such damages are to be strictly construed. *King v. E.I. Du Pont de Nemours*, 850 F.Supp. 503 (W.D.La., 1994).

---

2. The court notes that La.R.S. 23:13 can no longer give rise to an employee's claim against his employer because of the exclusivity provisions of the workers' compensation statute. *Courtney v. BASF Wyandotte Corp.*, 385 So.2d 391 (La.App. 1 Cir., 1980); *Reeder v. Laks Corp.*, 555 So.2d 7 (La.App. 1 Cir., 1989). However, Canter is applicable in the present case because

it delineates when an employee may be individually liable for acts done in the course and scope of his employment. Thus, if this court found that plaintiff could establish a cause of action against either non-diverse defendant based on an intentional tort or Civil Code art. 2315.3, the plaintiff would also have to satisfy these factors to hold that defendant individually liable.

In *Billiot v. B.P. Oil Co.*, 645 So.2d 604 (La.1994), the Supreme Court of Louisiana held that the remedy exclusion rule of the workers' compensation statute does not bar an employee from recovering from his employer under article 2315.3. To recover under that article a plaintiff must prove four essential elements: (1) that the defendant's conduct was wanton and reckless, involving an extreme departure from ordinary care in situations where a high degree of danger is apparent; (2) that the danger created by the defendant's conduct threatened or endangered public safety; (3) that the conduct occurred in the storage, handling, or transportation of hazardous or toxic substances; and (4) that the plaintiff's injury was caused by the defendant's conduct. *Billiot* 645 So.2d at 613.

As discussed above, in a diversity case a federal district court must apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, a common law federal district court sitting in Louisiana must be aware that the substantive law it must apply in diversity cases is the civilian law of Louisiana. Under the civil law, courts should look first to the written language adopted by the legislature as the correct source of law. *The State of Louisiana, et al v. Sprint Communications Co. et al.*, 899 F.Supp. 282 (M.D.La.1995). Article 2315.3 itself does not provide any guidance as to what is a hazardous or toxic substance, so most Louisiana courts, following the civilian tradition, have relied upon *in pari materia* to determine whether a substance is hazardous or toxic. *Vincent v. Southwest Louisiana Electric Membership Corp.*, 666 F.Supp. 94,

95–96 (W.D.La.1987). During the same legislative session in which it enacted art. 2315.3, the legislature enacted La.R.S. 30:2272(4)(a) which defines hazardous substance [3] and La.R.S. 40:1299.100 which defines toxic substance.[4] Central to these definitions is the requirement that the substance be designated as hazardous or toxic by an agency of the state. The defendants assert that since PVC has not been designated as a hazardous or toxic substance by any agency of the state PVC is not a hazardous or toxic substance under art. 2315.3. Plaintiff does not refute this, or offer any specific factual or legal arguments to show that PVC should be considered a hazardous or toxic substance. As discussed above, plaintiff cannot simply rely on factual and legal conclusions to successfully oppose this motion. The court finds that the defendants have shown that plaintiff could not establish a cause of action against the individual defendants for exemplary damages under Civil Code art. 2315.3 in a Louisiana state court because plaintiff has not presented any evidence which indicates that PVC would be considered a hazardous or toxic substance by Louisiana courts.

## CONCLUSION

The court finds that defendants, Higginbotham and Austin, were "fraudulently joined." Defendants have shown that plaintiff could not establish a claim against either Higginbotham or Austin in a Louisiana state court for either an intentional tort, or for exemplary damages under La.Civil Code art. 2315.3. Defendants have also shown that plaintiff could not establish a claim against either Higginbotham or Austin indi-

---

3. La.R.S. 30:2272(4)(a) defined a "hazardous substance" as:

> ... any gaseous, liquid, or solid material which because of its quality, concentration, or physical, chemical, or biological composition when released into the environment, poses a substantial present or potential hazard to human health, the environment, or property, and which material is identified and designated as being hazardous by rules and regulations adopted and promulgated by the secretaries of the Department of Environmental Quality or of the Department of Public Safety and Corrections, regardless of whether it is intended for use, reuse, or is to be discarded.

This same definition had been enacted as part of the Hazardous Materials Transportation and Motor Carrier Safety Act in 1980.

4. La.R.S. 40:1299.100 defined toxic substances as:

> ... those substances which are designated as toxic in rules and regulations adopted by the Department of Public Safety and Corrections with the concurrence of the Department of Environmental Quality....

This is currently designated La.R.S. 40:1299.100(A)(3).

vidually in a Louisiana state court. Plaintiff's motion to remand the case to the 18th Judicial District Court in Pointe Coupee Parish is hereby DENIED.